The HOPE CLINIC, et al.,
Plaintiffs–Appellees,

v.

James E. RYAN, Attorney General of Illinois, and Richard K. Devine, State's Attorney of Cook County, Illinois, Defendants–Appellants.

**Dennis D. Christensen, et al.,**
**Plaintiffs–Appellants,**

v.

**James E. Doyle, Attorney General of Wisconsin, and Diane M. Nicks, District Attorney for Dane County, Wisconsin, Defendants–Appellees.**

Nos. 98–1726, 99–2528, 99–2533.

United States Court of Appeals,
Seventh Circuit.

Nov. 30, 1999.

**Order**

By the Court:

The motions for stays of mandate are denied by an equally divided court. By majority vote, pursuant to Fed. R. App. P. 41(b), the court has determined that the mandates will issue on December 1, 1999.

Circuit Judge Ripple did not participate in the consideration or decision of these cases.

DIANE P. WOOD, Circuit Judge, with whom POSNER, Chief Judge, and ILANA DIAMOND ROVNER, TERENCE T. EVANS, and WILLIAMS, Circuit Judges, join, dissenting from the order denying the stay of the mandate.

Displaying a regrettable disregard for the importance of the issues implicated in these two cases, the split in views about their proper disposition not only within this court but around the country, and the inadequacy of the injunctions that the opinion in these cases contemplates, five members of this court have voted to deny plaintiffs' motions for a stay of the mandates pending the Supreme Court's consideration of their petitions for certiorari. Five other members of the court have voted to grant the requested stay. The even split means that there is no majority in favor of the stay, which means in turn that the mandates will issue on the date specified in the order being issued today. The insistence of five members of the court on immediate implementation of the decision does nothing to assist the orderly presentation of fundamental constitutional questions to the highest court in our country. Furthermore, as I explain briefly below, the "precautionary injunctions" that the majority's merits opinion directs the district courts to enter (which of course have not yet been drafted, nor tested in any court of law) are by design insufficient to prevent irreparable harm while the plaintiffs pursue their remedies in the Supreme Court. I therefore dissent from the court's decision to deny the requested stay of the mandates.

By asserting that the planned "precautionary injunctions" will be enough to forestall irreparable harm, those who think the stays should be denied have assumed the answer to some of the very questions that will be put before the Supreme Court in the petitions for certiorari. In so doing, they have misunderstood the perspective we should adopt at this final stage of proceedings in the court of appeals. When we consider a stay of our mandate to allow the Supreme Court to act, we are no longer acting as a single circuit. The question is instead how the views of this circuit's judges correspond to the views expressed by other courts around the country. That is the context in which we should measure the risk of irreparable harm, and from that standpoint, it is considerable. We are dealing, after all, with matters of life and death, as they relate to a woman's exercise of a constitutional right the Supreme Court has repeatedly recognized. See, e.g., Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35

L.Ed.2d 147 (1973). Even the stay opponents cannot dispute the fact that the circuits are divided on the question whether statutes like the Illinois and Wisconsin laws are constitutional. The "precautionary" injunctions that the district courts are expected to enter on remand from this court will do nothing to ameliorate much of that risk. The contemplated injunctions will not add a "health" exception to the Wisconsin and Illinois statutes, and apart from the one doctor on whom the merits majority relied, a great number of respectable physicians (including the American College of Obstetricians and Gynecologists, or ACOG) believe that a health exception is necessary. If the majority's medical prediction turns out to be wrong and ACOG is right, some women in this region of the country may find their health permanently impaired even with the "precautionary" injunctions in place.

There is another problem as well with the "precautionary" injunctions, which is the fact that they do not even exist right now. For reasons explained in its merits opinion, the majority thinks that there is enough danger of improper enforcement of both statutes to warrant the extraordinary step of directing the issuance of the injunctions. But that process may take weeks, or even months, leaving a legal void in the meantime during which the states will be utterly unconstrained. Even if the Attorneys General themselves can be counted on not to abuse their position during this lacuna, the same cannot be said for all prosecutors. Law enforcement in both states is decentralized, carried out by local prosecutors who are independently elected officials. Particularly during the time period while local prosecutors are not legally compelled to decipher whatever precautionary injunction is entered, some may decide to prosecute abortion providers who perform D & E procedures that literally conform to the statutory definition of a "partial-birth abortion," which the majority concedes are constitutionally protected. No doubt the probability of such prosecutions is small, but, given the fact that we

are talking about a total of 174 independent county prosecutors in the two states, it is just as real as the risk (also assumed by the majority to be small) that led to the precautionary injunctions to begin with.

In addition, as Chief Judge Posner's opinion dissenting on the merits clearly explains, there are many who will be unable to draw a sensible line between the D & E procedure that the "precautionary" injunctions, once drafted, will allegedly find some way to protect, and the D & X procedure that they will permit the states to prohibit (on pain of life imprisonment in Wisconsin, it is worth remembering, lesser imprisonment in Illinois, and potential loss of professional license in both places). Saying that the line can be drawn is not the same thing as drawing it, no matter what *scienter* standards the majority has articulated. The doctors, who have little personally to gain from donning a legal hat and guessing how close to the line they dare go, and everything to lose, will inevitably take a conservative approach that will burden the constitutional rights of their patients. This is the rationale that underlay the positions of the Sixth and Eighth Circuits. See *Carhart v. Stenberg,* 192 F.3d 1142, 1149–52 (8th Cir.1999); *Little Rock Family Planning Services, P.A. v. Jegley,* 192 F.3d 794, 797 (8th Cir.1999); *Women's Medical Professional Corp. v. Voinovich,* 130 F.3d 187, 197–200 (6th Cir. 1997). Indeed, the Eighth Circuit thought it so clear that wording essentially identical to that found in our two statutes prohibited the D & E procedure that it seems not to have found the statutes before it vague at all, which is why it proceeded to the undue burden analysis. See *Planned Parenthood of Greater Iowa, Inc. v. Miller,* 195 F.3d 386, 388 (8th Cir.1999).

In my view, the only responsible action this court can take from the standpoint of its national responsibility and role is to

stay the mandates pending the Supreme Court's disposition of the petitions for certiorari. I note in this connection that counsel for the Attorney General of Wisconsin, in her response to the plaintiffs' motion, informed this court on November 18, 1999, that the defendants-appellees in *Christensen* do not oppose the requested stay. Although that notification reached the court after its November 17, 1999, order denying the stay, it is now properly before us, and it tells us in plain language that Wisconsin believes that the orderly course of proceedings—which, it is worth recalling, is a different question from the merits—will be furthered, or at least not harmed, by the stay. Should the Supreme Court decide not to hear these cases, implementation of the majority's conclusions will be delayed by at most four to six months. If, however, the Court grants the petitions in these cases, or grants in one of the other pending cases and holds these on its docket, that means it has concluded that the cases are indeed of extraordinary national importance. The lack of harm from a grant of the requested stay (recall that both state laws have been on hold throughout the pendency of this litigation), the risk of irreparable injury to both women and their doctors from its denial, and our responsibility to preserve the status quo for the Supreme Court, all demonstrate how ill-advised the action by this equally divided court truly is. I respectfully dissent from the denial of the motions for the stay of the mandates.